UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LILUMA KARZAI,
                    Plaintiff,

-v-

METROPOLITAN LIFE INSURANCE
COMPANY, OFFICE OF FEDERAL
EMPLOYEES GROUP LIFE
INSURANCE,
                    Defendant.

22-CV-4522 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

On June 1, 2022, Plaintiff Liluma Karzai[1] filed this action for breach of contract against the Office of Federal Employees Group Life Insurance within Metropolitan Life Insurance Company ("MetLife" or "Defendant"). Karzai claims that MetLife erroneously paid her deceased husband's life insurance benefit from his Federal Employees Group Life Insurance ("FEGLI") policy to his former spouse instead of to her. She seeks to recover the full amount of the FEGLI Benefit, in addition to fees and costs. She also seeks a declaratory judgment that she is the sole beneficiary of the FEGLI Benefit and entitled to receive all proceeds from it. Pending before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, Karzai's motion is denied and MetLife's motion is granted.

---

[1] This matter involves three individuals with the surname Karzai. The Court refers to Plaintiff Liluma Karzai as "Karzai."

1

I.      **Background**[2]

Haider Karzai ("Haider") was a federal government employee from at least 1998 until approximately September 2016, when he retired. (*See* Plaintiff's 56.1 ¶¶ 4, 8, 11.) Throughout his time in government service, he was a participant in the FEGLI program, which provided him a term life insurance policy. (Plaintiff's 56.1 ¶ 1.) The United States Office of Personnel Management ("OPM") contracts with MetLife to administer the FEGLI program for federal employees. (Plaintiff's 56.1 ¶ 2; ECF No. 28-16 ("FEGLI Contract")).

In 1998, Haider and his first wife, Ramona Karzai ("Ramona"), divorced and executed a document titled "Stipulation: Division of Petitioner's Retirement Benefits with Civil Service Retirement System and Order Thereon and Marital Settlement Agreement" (the "Divorce Decree"), which is governed by California law. (Defendant's 56.1 ¶ 6; Plaintiff's 56.1 ¶ 5; ECF No. 28-1.) Paragraph 17 of the Divorce Decree provided the terms of Haider's spousal support obligation:

> Respondent shall pay to Petitioner for spousal support the sum of $857 per month, payable in advance, on the first day of each month, commencing September 1, 1997, and continuing until either party's death, the remarriage of Petitioner or modification or revocation by further Court order, whichever occurs first.

(Defendant's 56.1 ¶ 7.) Paragraph 31 of the Divorce Decree further specified:

> Respondent shall designate Petitioner as the sole primary beneficiary on the term life Insurance policy insuring his life issued through his employer in the face amount equal to double Respondent's annual salary. Such designation shall be maintained as long as said coverage is available or until the obligation for support ends. Respondent shall keep Petitioner informed of such designation for said duration.

---

[2] The following facts are taken from the parties' statements of undisputed material facts unless otherwise noted. (See ECF No. 23-2 ("Defendant's 56.1"); No. 30 ("Plaintiff's 56.1").). The facts recited here are themselves undisputed unless otherwise noted.

(Defendant's 56.1 ¶ 8.)  Pursuant to Paragraph 31, Haider named Ramona as the sole beneficiary of his FEGLI term life insurance policy.  (Plaintiff's 56.1 ¶ 6.)  In February 2006, Haider married Liluma Karzai, the Plaintiff in this case.  (Plaintiff's 56.1 ¶ 9.)  But Ramona remained the sole beneficiary of the FEGLI plan, as required by the divorce settlement, throughout Haider's time as a federal employee.  (Plaintiff's 56.1 ¶ 10.)  The Divorce Decree was never modified or revoked.  (Defendant's 56.1 ¶ 8.)  Just before he retired in September 2016, Haider attempted to change the beneficiary of the FEGLI plan from Ramona to Liluma Karzai by submitting an OPM Designation of Beneficiary Standard Form 2823 to his employer, the Department of State, and the Office of Personnel Management.  (Defendant's 56.1 ¶ 9.)  OPM accepted the form.  (Plaintiff's 56.1 ¶ 14.)  According to its policies, MetLife does not receive or maintain beneficiary designations from plan participants until a claim is submitted.  (Defendant's 56.1 ¶ 5.)  At that point, OPM or another federal agency provides MetLife the documentation that it has on file, including any beneficiary designation.  (*Id.*)

Haider believed that the provision of the Divorce Decree requiring him to maintain Ramona as beneficiary expired upon his retirement and that by submitting the Form 2823, he had successfully made Karzai the sole beneficiary.  (Plaintiff's 56.1 Statement ¶¶ 16-17.)[3]

Haider died on March 30, 2021.  (Defendant's 56.1 ¶ 6.)  On May 14, 2021, Karzai submitted a claim for benefits pursuant to the FEGLI plan; the claim was denied on June 1, 2021.  (Defendant's 56.1 ¶¶ 10-11.)   The denial letter stated:

---

[3] MetLife denies knowledge as to Haider and Karzai's subjective beliefs about whether the Divorce Decree was still binding after Haider's retirement but does not contest the truth of this statement.  (ECF No. 32-1 ¶ 16.)  MetLife objects to the introduction of these allegations pursuant to Federal Rule of Civil Procedure 56(c)(2).  (*Id.*)

> The Office of Personnel Management has certified that there was a divorce decree on file with their office prior to the date of death of Haider Karzai.
>
> Therefore the divorce decree that was submitted is considered valid and will have full bearing on this policy. There are no benefits payable to you based on the divorce decree.

(ECF No. 28-6.)  Ramona submitted a claim for the FEGLI Benefit on October 4, 2021.  (Defendant's 56.1 ¶ 12.)  Her request was approved and the proceeds from the FEGLI plan paid out to her by March 16, 2022.  (Defendant's 56.1 ¶ 17.)

Karzai continued to contest MetLife's determination through counsel and subsequently filed the instant lawsuit.  On January 26, 2023, MetLife moved for summary judgment on the basis that it properly paid the FEGLI Benefit to Ramona.  (ECF No. 23.)  On February 24, 2023, Karzai moved for summary judgment on her claim that she was the rightful beneficiary.  (ECF No. 26.)

**II.      Legal Standard**

Under Federal Rule of Civil Procedure 56(a), the Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"Summary judgment is generally proper in a contract dispute only if the language of the contract is wholly unambiguous." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 157 (2d Cir. 2000).  "The question of whether the language of a contract is clear or ambiguous is a question of law to be decided by the court." *Id.*

4

When there are cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

## III.  Discussion

The facts and legal authorities cited by both parties support a conclusion that Ramona Karzai was the proper beneficiary of the FEGLI Benefit and that Defendant MetLife is entitled to judgment as a matter of law.

### A.  Interpretation of the Divorce Decree

There is no dispute that Ramona was the sole beneficiary of the FEGLI policy until Haider retired, in keeping with the Divorce Decree.  Instead, the parties dispute how the terms of the Divorce Decree were to be interpreted after Haider retired.  Karzai argues that MetLife breached its contractual duty when it interpreted the Divorce Decree to remain in effect after Haider retired.  According to Karzai, the Divorce Decree required Haider to maintain Ramona as beneficiary only while he was employed as a federal employee and collecting an annual salary, according to both its express terms and the principles of California law.  Karzai's argument fails.

The FEGLI Benefit is administered pursuant to the Federal Employees' Group Life Insurance Act of 1954 (FEGLIA), 5 U.S.C. § 8701 *et seq*.  Under FEGLIA, after a covered employee dies, life insurance benefits are paid in accordance with a standard "order of precedence."  *Hillman v. Maretta*, 569 U.S. 483, 486 (2013) (quoting 5 U.S.C. § 8705(a)).  The proceeds from a FEGLI benefit "accrue first to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death."  *Id.*  (internal quotations omitted).  The relevant OPM regulation provides that "an employee may 'change [a] beneficiary at any time without the knowledge or consent of the previous beneficiary,' and makes clear that

5

'[t]his right cannot be waived or restricted.'" *Id.* at 487 (quoting 5 CFR § 870.802(f)). But in 1998, Congress created a limited exception to the employees' right of designation. Under the statute:

> 'Any amount which would otherwise be paid to a person determined under the order of precedence . . . shall be paid (in whole or in part) by [OPM] to another person if and to the extent expressly provided for in the terms of any court decree of divorce, annulment, or legal separation' or related settlement, but only in the event the 'decree, order, or agreement' is received by OPM or the employing agency before the employee's death.

*Id.* (quoting 5 U.S.C. § 8705(e)(1)–(2)). These provisions of FEGLIA were expressly incorporated into MetLife's FEGLI contract with OPM. (*See* FEGLI Contract § 1.3(a)).

As a threshold matter, Paragraph 31 of the Divorce Decree unambiguously indicates that it would continue to apply after Haider's retirement; there is no genuine dispute on that issue. Paragraph 31 states:

> Respondent shall designate Petitioner as the sole primary beneficiary on the term life Insurance policy insuring his life issued through his employer in the face amount equal to double Respondent's annual salary. Such designation shall be maintained as long as said coverage is available or until the obligation for support ends. Respondent shall keep Petitioner informed of such designation for said duration.

Contrary to Karzai's argument, the first sentence does not limit Haider's obligation to maintain Ramona as the plan beneficiary to the period of his active employment with the federal government. The phrase "issued through his employer" merely specifies which life insurance policy the provision is referring to. The phrase "in the face amount equal to double Respondent's annual salary" specifies what the parties understood to be the value of the policy. A reasonable jury would not read this sentence as expressly limiting Haider's obligation to the period of his active employment. Nor is that a permissible reading of the next sentence: Haider was required to maintain Ramona as beneficiary "as long as" coverage was available or until the obligation for support ended. The parties do not dispute that coverage under the FEGLI policy

6

was available after Haider's retirement.  Nor do they dispute that there was no modification or termination of the Divorce Decree that ended the spousal support obligation.

Karzai's primary basis for arguing that the support obligation ended upon Haider's retirement is a citation to section 4320(l) of the California Family Code, which directs courts issuing spousal support orders to consider a long list of factors, including "[t]he goal that the supported party shall be self-supporting within a reasonable period of time."  (ECF No. 27 at 11 (quoting Cal. Fam. Code Ann. § 4320(l)).  This argument fails.  Under California law, a contract is to be interpreted based on the mutual intention of the parties at the time of formation, which "is to be inferred, if possible, solely from the written provisions of the contract."  *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003) (quoting Cal. Civ. Code, § 1636); *see also In re Marriage of Nassimi*, 3 Cal. App. 5th 667, 687 (Oct. 14, 2016) (applying principles of contract interpretation to marital settlement agreement).  Further, "[t]he clear and explicit meaning of these provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage, controls judicial interpretation."  *MacKinnon,* 31 Cal. 4th at 647-47 (cleaned up).  "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."  *Nassimi*, 3 Cal. App. 5th at 688.

Paragraph 17 of the Divorce Decree contemplated that spousal support would continue "until either party's death, the remarriage of [Ramona] or modification or revocation by further Court order, whichever occurs first."  In this context, then, the mutual intent of the phrase "until the obligation for support ends" in Paragraph 31 cannot reasonably be read to end Haider's support obligation upon his retirement; that reading does not adhere to the clear meaning of the

relevant provisions and the contract as a whole.[4]  Karzai's reliance on *McGee v. Weinberg*, 159 Cal. Rptr. 86 (Cal. App. 2d Dist. 1979), a case whose holding centers on whether the statute of limitations had run on the plaintiff's malpractice claim against her former divorce attorney, is unavailing; dicta from that case is not binding precedent.

There is therefore no genuine dispute as to whether the terms of the Divorce Decree continued to apply after Haider retired.  Further, the parties do not dispute that the Divorce Decree was on file with OPM before Haider died, as required by 5 U.S.C. § 8705(e)(1)–(2).  As such, per the terms of the statute, Ramona was the proper beneficiary of the FEGLI policy.

B.  **Fair and Reasonable Investigation**

Separately, Karzai asserts that MetLife failed to conduct a fair and reasonable investigation as to who the proper beneficiary of the FEGLI policy was under California law, which she frames as an independent breach of the FEGLI Contract.  (ECF No. 27 at 12 (citing FEGLI Contract § 2.6(a)).  Per the FEGLI Contract, MetLife is required to pay insurance benefits "based on receipt of satisfactory written proof."  (FEGLI Contract § 2.6(a)).  It is also required to "use reasonable diligence to ensure that the proof is satisfactory."  *Id.*  Its "determination as to the entitlement to payment of Benefits is to be given full force and effect, unless it can be shown that the determination was arbitrary and capricious."  *Id.*  Karzai has failed to present evidence showing that she is entitled to judgment as a matter of law on this issue.  A reasonable jury could conclude that, under the circumstances, MetLife fulfilled its duty

---

[4] Additionally, the text of the relevant provision of the California Family Code is contrary to Karzai's argument.  The statute clarifies that "nothing in this section is intended to limit the court's discretion to order support for a greater or lesser length of time, based on any of the other factors listed in this section, Section 4336, and the circumstances of the parties."  Cal. Fam. Code Ann. § 4320(l).  Thus, to the extent that Karzai argues that the length of the support obligation created by Paragraphs 17 and 31 is necessarily void under California law, her argument fails.

of reasonable diligence under the FEGLI Contract without needing to "inquire as to how to interpret the Divorce Decree under California law." (ECF No. 27 at 12.)

As an initial matter, Karzai argues that contrary to the plain language of the FEGLI Contract, the Court should not review MetLife's determination under an arbitrary and capricious standard because (1) such a standard is void under California insurance law and (2) applying the standard here is not fair because the relevant provision is "tucked away in a single provision of the FEGLI Contract" and was not known to Haider or Karzai. Both arguments fail. First, Karzai's reliance on section 10110.6 of the California Insurance Code is misplaced. The FEGLIA statute expressly preempts the application of this type of state insurance law.[5] Second, it is disingenuous for Plaintiff to rely on some provisions of the FEGLI Contract to substantiate her legal claims while disclaiming knowledge of provisions that undercut her arguments.

In the alternative, Karzai argues that MetLife acted in an arbitrary and capricious manner in completing its investigation. But the facts and legal authorities that Karzai cites to bolster her argument are not persuasive. A plan administrator acts in an arbitrary and capricious manner in denying benefits when its determination is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008) (citation omitted).[6] Karzai cites no evidence supporting a conclusion that MetLife's determination was without reason or erroneous as a matter of law. A reasonable jury could find

---

[5] *See* 5 U.S.C. § 8709(d)(1) ("The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State or political subdivision thereof, or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions.")

[6] While *McCauley* concerned benefits under ERISA, neither party contests its application to the arbitrary and capricious standard contained in the FEGLI Contract. (ECF No. 23-1 at 17; No. 27 at 19 n.7.)

that, in choosing not to cite California law in its claim denial, MetLife reasonably relied on its interpretation of the Supreme Court's decision in *Hillman*, which held that FEGLIA preempts conflicting state law and that insurance proceeds owed to the beneficiary identified by the FEGLIA order of precedence "cannot be allocated to another person by operation of state law." 569 U.S. at 496.  And setting aside the issue of preemption, Plaintiff does not point to any relevant, binding California law that would have required MetLife to interpret the Divorce Decree differently.  This undermines her contention that MetLife's determination was erroneous.

Additionally, that MetLife collected information at the outset of its investigation that it did not eventually rely on in issuing its final decision, *e.g.*, ECF No. 27 at 13, does not indicate that it acted erroneously.  Plaintiff also notes that MetLife paid the FEGLI Benefits to Ramona without notifying her first, while she was still contesting her right to them.  But she does not point to any authority that entitled her to such ex-ante notice once the proper beneficiary had been identified.  While Plaintiff argues that MetLife should have commenced an interpleader action before making a final determination and payment, she does not show that it acted in an arbitrary and capricious manner in choosing not to do so.  Put simply, the identity of the proper beneficiary was sufficiently clear under the applicable laws.  MetLife has shown that it paid the FEGLI Benefit to Ramona based on the express requirements of the Divorce Decree, in concert with the clear requirements of 5 U.S.C. § 8705(e)(1)–(2).

Karzai is therefore not entitled to summary judgment on the issue of whether MetLife failed to conduct a fair and reasonable investigation.

## IV. Conclusion

Because Karzai has failed to show that she is entitled to judgment as a matter of law on her claims that MetLife breached the terms of the FEGLI Contract and failed to conduct a

reasonable investigation, her motion for summary judgment and request for declaratory relief are DENIED.

Because MetLife has shown that there is no genuine dispute of material fact regarding its adjudication of the proper beneficiary of Haider Karzai's FEGLI plan, it is entitled to judgment as a matter of law.  Its motion for summary judgment is therefore GRANTED.

The Clerk of Court is directed to close the motions at ECF Nos. 23 and 26.  The Clerk of Court is further directed to enter judgment in favor of Defendant and to close this case.

SO ORDERED.

Dated: June 27, 2023
New York, New York

_____
J. PAUL OETKEN
United States District Judge